# EXHIBIT 20

```
 1                UNITED STATES DISTRICT COURT

 2                WESTERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - X
     MICHAEL DONOGHUE and PREMIUM)      20CV6100
 4   MORTGAGE CORPORATION,
                     Plaintiffs )
 5   vs.                                Rochester, New York
     CYNTHIA NOSTRO, DYLAN RANDALL,
 6   DAVID POPHAM and EVERETT
     FINANCIAL, INC d/b/a SUPREME
 7   LENDING                     )      February 25, 2022
                                             1:00 p.m.
 8   - - - - - - - - - - - - - - - X
     CASE MANAGEMENT CONFERENCE
 9

10             TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE MARK W. PEDERSEN
11              UNITED STATES MAGISTRATE JUDGE

12
     SHARON P. STILLER, ESQ.
13   MAUREEN BASS, ESQ.
     ALEX FANTAUZZO, ESQ.
14   Abrams, Fensterman, LLP
     Ferrara & Wolf, LLP
15   160 Linden Oaks, Suite E
     Rochester, New York 14625
16   (Appearing on behalf of the Plaintiff)

17   ANNA S.M. MCCARTHY, ESQ.
     JEFFREY J. CALABRESE, ESQ.
18   Harter Secrest and Emery, LLP
     50 Fountain Plaza, Suite 1000
19   Rochester, New York 14604
     (Appearing on behalf of Defendants Nostro, Randall &
20   Popham)

21   STEVEN E. COLE, ESQ.
     Adams Leclair LLP
22   28 East Main Street, Suite 1500
     Rochester, New York 14614
23   (Appearing on behalf of Defendant Everett Financial, Inc
     d/b/a/ Supreme Lending
24
     COURT REPORTER: Karen J. Clark, Official Court Reporter
25                   Karenclark1013@AOL.com
```

```
                1           M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
14:29:22        2    again, I reference the box of 1200 pages of Premium
14:29:28        3    documents.  Had this interrogatory been answered,
14:29:34        4    whether in October of 2020 or November of 2021, we would
14:29:40        5    not have had to guess.  We would have known that that
14:29:44        6    was one of the pieces that was relevant that they have.
14:29:50        7           MAGISTRATE JUDGE PEDERSEN:  All right.  Let
14:29:51        8    me deal first with Supreme.  Mr. Cole, finally you get a
14:29:55        9    speaking part an hour and a half into this.
14:29:56       10           MR. COLE:  I apologize for my voice, Judge.
14:29:59       11    I came back from a vacation in altitude a few days ago
14:30:05       12    and my voice is not carried with me quite as well as it
14:30:09       13    should have.
14:30:10       14           MS. STILLER:  No more vacations.
14:30:14       15           MR. COLE:  So, as far as addressing the
14:30:17       16    specific issue raised as to Supreme's text messages, you
14:30:23       17    know, Supreme, as you know, of course, is an
14:30:28       18    organizational entity.  And there have been requests for
14:30:36       19    text messages to be retrieved, reviewed and produced.
14:30:40       20    Stepping back from where we are right now is that
14:30:46       21    Supreme has basically been in a position of trying to
14:30:48       22    figure out exactly what the next, and, hopefully, final
14:30:53       23    production looks like, depending on what your Honor
14:30:56       24    rules, what the relevant universe of potential
14:31:00       25    pre-qualified customers are, and the scope of the other
```

```
 1             M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
 2   documents, document requests that we've received.  So we
 3   have a number of documents ready to be produced and are
 4   in the process of being produced.  And what Supreme has
 5   done, really, is to try and determine, out of all of the
 6   -- they have many, many, they have many, many, they have
 7   many, many offices, they have many employees, they have
 8   many customers.  And in order to properly search their
 9   records, they need more information.  And that is --
10   we've been through this a couple of times here.  Judge,
11   I think we're at the point where Premium has identified
12   the 43 or so pre-qualified customers that it says came
13   over to Supreme.  There, in addition, have been the
14   documents that were recently produced by Supreme that
15   identified all of the closings for 2019 after the
16   individual defendants came to Supreme's employment that
17   have been produced to Premium this past week after the
18   last conference, and a meet and confer between counsel.
19   And as a result, between the request for -- once we have
20   all of the necessary information to conduct the search,
21   we already have the documents ready to search.  We
22   conducted the searches, and I believe we're in a
23   position to provide a comprehensive response in a very
24   short order.  But it's been, as we've been going through
25   this process with the meet and confers, to try and
```

|  |  |  |
|---|---|---|
| | 1 | M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL |
| 14:33:07 | 2 | determine exactly what is responsive and what is |
| 14:33:11 | 3 | extraneous to this dispute, it's taken time for us, for |
| 14:33:15 | 4 | our eDiscovery vendor to go through and provide the |
| 14:33:21 | 5 | responsive documents, and then have them reviewed.  So, |
| 14:33:24 | 6 | we're in a position to do that.  Included in that, I |
| 14:33:27 | 7 | believe, is going to be some reviews of text messages |
| 14:33:32 | 8 | exchanged by some of the senior people involved at |
| 14:33:37 | 9 | Supreme at the time that the individual defendants came |
| 14:33:40 | 10 | over.  And I think that is really the time period we're |
| 14:33:44 | 11 | talking about here.  So, in terms of those individuals |
| 14:33:48 | 12 | who were in communication with the individual |
| 14:33:50 | 13 | defendants, to the extent there are text messages with |
| 14:33:53 | 14 | respect to those individuals, those that are relevant |
| 14:33:57 | 15 | and responsive to the requests that have been made, |
| 14:34:02 | 16 | those are going to be produced. |
| 14:34:04 | 17 | MS. STILLER:  Your Honor, there was a |
| 14:34:05 | 18 | litigation hold letter May 2nd, 2019, request October of |
| 14:34:12 | 19 | 2020, we have been patient and waited and waited and we |
| 14:34:17 | 20 | should not have to wait any longer or say these things |
| 14:34:20 | 21 | may be produced or we're looking for them.  They should |
| 14:34:25 | 22 | have held onto them in 2019.  They should have produced |
| 14:34:29 | 23 | them in 2020.  And the fact that we, because we keep |
| 14:34:34 | 24 | pushing for the production that should have occurred in |
| 14:34:37 | 25 | the beginning, the fact that this stuff is revealed and |

```
 1         M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
 2   then put into a corner where they finally have to reveal
 3   it, we shouldn't have to wait.  This should get done.
 4   We shouldn't have had to spend all of this time and
 5   energy on it.  What everybody is admitting today is that
 6   there is relevant stuff that hasn't been produced and it
 7   hasn't been produced in a fashion where it's useful to
 8   us.  We've been forced to pull teeth like dentistry.
 9   We've put in our motion papers that with respect to the
10   text messages and preserving text messages, there is no
11   one who should know about that better than Supreme
12   because Supreme had brought a similar lawsuit claiming
13   that their business was stolen from another individual
14   and they actually faced a spoliation motion as a result
15   of having deleted text messages.  So, when I sent -- and
16   that was back in, I think, 2016 or 2017.  So they can't
17   claim ignorance or surprise or anything.  And, you know,
18   I know that your Honor wants to get through this
19   process.  But it shouldn't be this difficult.  It
20   shouldn't be -- we shouldn't be getting promised
21   documents on the if come at this point of the
22   litigation.
23              MAGISTRATE JUDGE PEDERSEN:  So, Mr. Cole,
24   what do you need to finish up your search and
25   production.
```

```
               1         M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
14:36:21       2              MR. COLE:  Basically nothing now, Judge.
14:36:22       3    We're in process.  And the problem has always been that
14:36:28       4    we were not told by Premium what customers were at
14:36:34       5    issue.  We finally were told in January of 2022, some of
14:36:39       6    the names of customers that were pre-qualified at
14:36:44       7    Premium, and they said ended up closing loans at
14:36:48       8    Supreme.  We immediately -- we immediately investigated
14:36:52       9    that and we added any of those customers that we hadn't
14:36:56      10    already searched.  Because we already did a search.  We
14:36:59      11    did a production in January of 2022.  They complained
14:37:03      12    about how many documents there were because that is the
14:37:06      13    way it is.  If you search a borrower's name in Supreme's
14:37:11      14    files, you're going to get many, many documents.
14:37:13      15    Because there are many, many documents associated with a
14:37:15      16    loan closing.  We took a list that was given to us at
14:37:20      17    mediation, when we were at mediation in this case, and
14:37:23      18    it seems like a long time ago now, we used that list.
14:37:27      19    So we produced a lot of documents.  And then when they
14:37:32      20    actually came forward with documents showing somebody
14:37:35      21    had been pre-qualified at Premium, it was a small
14:37:39      22    percentage of those customers and there were some
14:37:43      23    additional customers that were not on the list to begin
14:37:47      24    with.  So we already gave a production.  And so we've
14:37:50      25    already over produced on one hand because we went from
```

```
                1         M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
14:37:54        2   information that we relied on Premium to provide.  Since
14:38:00        3   then, we've gotten the pre-qualification, the 43
14:38:05        4   borrowers that were actually pre-qualified, we've
14:38:09        5   searched them.  We've gone through all of the pipeline
14:38:13        6   documents at Supreme.  So, from April of 2019, when the
14:38:17        7   individual defendants came, to the end of May of 2019,
14:38:20        8   so every prospect that was lined up with any of the
14:38:25        9   individual defendants, we've taken those prospects and
14:38:28       10   searched all of those.  Again, because Premium was
14:38:32       11   insisting that any loan closing that was done by the
14:38:37       12   Williamsville office in 2019 was a possible hit on one
14:38:43       13   of their, one of their pre-qualifications back in 2019,
14:38:50       14   we've searched all of those, too.  All right.  All of
14:38:53       15   that stuff has been searched.  It needs to be finally
14:38:58       16   reviewed and produced, probably in the next two weeks.
14:39:01       17   As far as I'm concerned, we'll be done with providing
14:39:06       18   any information that we have in our system that relates
14:39:09       19   to any of their discovery requests, and that includes
14:39:13       20   the commission information that we discussed the last
14:39:15       21   time we were here, Judge.  That, we are providing that
14:39:20       22   after discussion with the Plaintiffs in this case.  And
14:39:25       23   any documents relating to the retaliation lawsuit that
14:39:28       24   we have, to the extent we can find them by searching our
14:39:33       25   files for things like that, we'll produce that, too.
```

```
             1           M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
14:39:36     2    And, you know, if there are any other loan, any
14:39:43     3    additional pre-qualified customers that the Plaintiffs
14:39:46     4    identify that we haven't already searched, we'll search
14:39:50     5    that, too, because we just need to take the volume of
14:39:54     6    information that we have, apply the search terms that
14:39:58     7    they are looking for, and then actually have the
14:40:02     8    analysis done.  And it all takes time.  It takes time to
14:40:07     9    ingest all of the data.  It takes time to review all of
14:40:11    10    the data, and it takes time to produce, and it's not a
14:40:17    11    cheap process, so we want to do it one more time and be
14:40:21    12    done with it.
14:40:21    13              MAGISTRATE JUDGE PEDERSEN:  I understood
14:40:22    14    from our very beginning of our discussions on discovery,
14:40:26    15    Premium didn't know the extent of which the systems were
14:40:29    16    breached because the individual defendants allegedly
14:40:33    17    erased information, so how could they have given you any
14:40:37    18    names?
14:40:37    19              MR. COLE:  But they did know, Judge.  They
14:40:40    20    did know.  And my understanding that the only thing that
14:40:42    21    got erased from Premium systems was an e-mail address
14:40:47    22    and/or telephone number for individual customers.  And
14:40:51    23    then they provided that very information to the DA's
14:40:55    24    office as to what files were impacted.  And then I'm led
14:40:59    25    to understand that that information was then retrieved
```

|  |  |
|---|---|
| 1 | M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL |
| 14:41:02  2 | and the individual defendants were required to pay for |
| 14:41:07  3 | the restoration of that information.  So, Ms. Stiller, |
| 14:41:09  4 | in the infamous May litigation hold letter, identified |
| 14:41:15  5 | exhibit A.  We've been over this before, Judge.  Exhibit |
| 14:41:18  6 | A was supposed to be this list of customers that was |
| 14:41:21  7 | sent out to the individual defendants and to Supreme. |
| 14:41:24  8 | And what Supreme said was, well, we received this |
| 14:41:31  9 | letter, and it says there is an exhibit A to that |
| 14:41:34 10 | identifies the loans to the customers that are in issue. |
| 14:41:38 11 | Could you please provide it to us and then we'll |
| 14:41:42 12 | investigate.  Nothing.  And nothing happened for seven |
| 14:41:46 13 | months.  And then they filed the lawsuit.  If this was |
| 14:41:49 14 | such an important theft of confidential information by |
| 14:41:53 15 | Premium, why did they do nothing for seven months? |
| 14:41:58 16 | Anyway, this is not to argue whether or not it's a |
| 14:42:02 17 | legitimate argument or legitimate scope of discovery, it |
| 14:42:06 18 | is.  We're not fighting it.  We just have to get our |
| 14:42:09 19 | handle on what customers are you talking about.  Because |
| 14:42:12 20 | they certainly know about some of them.  And I believe |
| 14:42:14 21 | they know about all of them.  And when we eventually get |
| 14:42:17 22 | to Supreme's outstanding discovery issues for the |
| 14:42:21 23 | Plaintiffs, that is really what we're asking.  You're |
| 14:42:26 24 | saying that information was taken and deleted.  Well, |
| 14:42:29 25 | what information was it.  Well, here is a list.  Here is |

Case 6:20-cv-06100-EAW-MJP   Document 82-21   Filed 05/30/22   Page 11 of 16

72

```
              1         M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
14:42:32      2    a list of files.  All right.  Did you produce the files?
14:42:35      3    No, we didn't produce the files.  Okay.  Well, how do
14:42:39      4    you know what is deleted?
14:42:42      5              In the last meet and confer, Ms. Bass told
14:42:45      6    me, well, it was e-mail addresses and telephone number.
14:42:50      7    My understanding is, if those were deleted, they are
14:42:54      8    able to be restored.  And I believe they were restored.
14:42:58      9    And, but, I don't know that for a fact.  That is what
14:43:01     10    discovery is for.  My belief is they well knew who at
14:43:05     11    least most of the customers were.  They were able to
14:43:08     12    identify 43 of those customers to us in response to
14:43:12     13    discovery in January of 2022, and that is what we're
14:43:15     14    going on.
14:43:17     15              MS. STILLER:  Your Honor --
14:43:17     16              MAGISTRATE JUDGE PEDERSEN:  Just a moment,
14:43:18     17    Ms. Stiller.  Go ahead.
14:43:25     18              MS. STILLER:  If I may just briefly, they
14:43:27     19    say that the best defense is a good offense.  And most
14:43:31     20    of Mr. Cole's explanation of why we haven't received
14:43:35     21    discovery despite having served discovery requests 16
14:43:39     22    months ago is an offense, which it is, again, and I
14:43:45     23    think this is the third time I've repeated this word,
14:43:49     24    disingenuous.  I have said to him and I have said to the
14:43:53     25    Court that I had hoped to compile a schedule A, but was
```

|          |    |                                                                                   |
|----------|----|-----------------------------------------------------------------------------------|
|          | 1  | M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL                                           |
| 14:43:57 | 2  | unable to do that because the information was deleted                             |
| 14:44:00 | 3  | from our system.  So schedule A was never compiled.                               |
| 14:44:07 | 4  | With respect to Mr. Cole, he said he will                                         |
| 14:44:10 | 5  | provide full discovery.  It's full discovery according                            |
| 14:44:15 | 6  | to Mr. Cole, because he invents what is relevant versus                           |
| 14:44:19 | 7  | what we have requested.  So, for example, he has limited                          |
| 14:44:23 | 8  | the documents that he has disclosed to, initially, to                             |
| 14:44:31 | 9  | Premium showing that they had information about this                              |
| 14:44:35 | 10 | person before, despite the fact that the computers were,                          |
| 14:44:41 | 11 | admittedly, tampered with.  Now we find in February of                            |
| 14:44:45 | 12 | 2022 that there are 1200 pages worth of prospective                               |
| 14:44:52 | 13 | client information that either was not entered into the                           |
| 14:44:56 | 14 | system or we had no idea that they had it.  So, to say                            |
| 14:45:01 | 15 | that there are 43 files or that we have the information                           |
| 14:45:05 | 16 | or that our ability to show anything is related to their                          |
| 14:45:10 | 17 | showing what they took, what they did with it, and what                           |
| 14:45:14 | 18 | sales were generated as a result of it, is, frankly,                              |
| 14:45:19 | 19 | ridiculous.  So, in the answers to request to produce,                            |
| 14:45:28 | 20 | it has all been supplemented.  Now that they've agreed                            |
| 14:45:33 | 21 | to produce, they've only agreed to produce certain                                |
| 14:45:36 | 22 | things.  So, commissions.  Commissions for 2019.  Well,                           |
| 14:45:40 | 23 | they took with them, or, apparently, Mr. Randall took                             |
| 14:45:46 | 24 | pre-qualification applications from Premium borrowers                             |
| 14:45:52 | 25 | from 2017 to 2018.  Why did he take them?  Because these                          |

```
             1         M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL
14:45:57     2   are the people that you can -- they are looking for
14:46:00     3   houses and you generate mortgages from these people.  If
14:46:05     4   2017 to 2018 was not relevant, he would not have taken
14:46:10     5   it with him.  And, again, there is a bunch of
14:46:14     6   information we have learned through the discovery
14:46:17     7   process that, aside from what was tampered with and what
14:46:21     8   was deleted from the system, there is a ton of
14:46:24     9   information that was never entered into the system to
14:46:29    10   begin with.  Why?  Because Supreme said, you make more
14:46:33    11   money if you bring more business over.  So they used our
14:46:37    12   business to start their business, and our documents to
14:46:40    13   start it.  But we're just pulling this stuff out right
14:46:44    14   now.  They know what they did.  They know what they
14:46:47    15   took.  And to spend half of his response not explaining
14:46:53    16   why they haven't produced any of this stuff before and
14:46:56    17   to say, well, we're just learning what information
14:46:59    18   Premium has and doesn't have, they know what they took.
14:47:04    19   They know what they used.  They know the sales.
14:47:08    20            I would also, you know, Mr. Cole says, well,
14:47:13    21   we'll produce it for 2019.  That is half a year.  In the
14:47:17    22   other case I was talking about where Scott Everett was
14:47:21    23   testifying, he testified that their damages would be a
14:47:23    24   year or more.  When they did an analysis in that case,
14:47:28    25   they did an analysis for five years worth of damages.
```

|  |  |
|---|---|
|  | 1    M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL |
| 14:47:32 | 2    So, it's not just the untimeliness of this production, |
| 14:47:38 | 3    and it's not just this disingenuous stuff that we're |
| 14:47:42 | 4    dealing with, you know, with mixing everybody together |
| 14:47:45 | 5    and saying, oh, you have it, you can figure it out, |
| 14:47:48 | 6    spend more time, spend more money going through it.  Mr. |
| 14:47:53 | 7    Cole says that he produced borrower's documents.  Well, |
| 14:47:57 | 8    he has produced things like borrower's tax returns and |
| 14:48:02 | 9    things like that, I don't really care about that stuff. |
| 14:48:05 | 10   That is not what we requested.  But, it's what I |
| 14:48:08 | 11   referred to previously as a document dump.  It makes it |
| 14:48:13 | 12   more difficult for us to go through 200 pages of |
| 14:48:18 | 13   lease-related documents or 200 pages of a checking |
| 14:48:25 | 14   account provided by a borrower.  We want to know -- we |
| 14:48:31 | 15   want to know what communications they had about taking |
| 14:48:36 | 16   business.  We want to know what they took.  We want to |
| 14:48:40 | 17   know what they did with it.  And we want to know who is |
| 14:48:43 | 18   involved.  And we still don't have that information.  I |
| 14:48:46 | 19   understand that your Honor, it's frustrating, your |
| 14:48:53 | 20   Honor, we've been involved in, I think, seven |
| 14:48:54 | 21   conferences with the Court, three meet and confers, one |
| 14:48:58 | 22   meet and confer that they cancelled because we thought |
| 14:49:02 | 23   it should be recorded to make sure it would be accurate |
| 14:49:09 | 24   as to people saying what they did.  I want there to be |
| 14:49:12 | 25   an end to it, which is why we brought our motion to |

|  |  |  |
|---|---|---|
|  | 1 | M. DONOGHUE, ET AL VS. C. NOSTRO, ET AL |
| 15:44:11 | 2 | applications from 2017 and 2018, as well as 2019, |
| 15:44:16 | 3 | because they are useful to them.  From those, they |
| 15:44:21 | 4 | bypass collecting data themselves and can contact those |
| 15:44:26 | 5 | people.  And I had said in court before, but I've said a |
| 15:44:31 | 6 | lot of things, that one of the documents Cindy Nostro |
| 15:44:45 | 7 | prepared before she left Premium or at least left it on |
| 15:44:49 | 8 | the computer, was a letter to pre-qualified applicants, |
| 15:44:53 | 9 | so these are people who will qualify for a mortgage and |
| 15:44:56 | 10 | whose contact information we have, and who people know |
| 15:45:00 | 11 | are looking for a house, and that e-mail said, well, I |
| 15:45:03 | 12 | haven't talked to you in a long time, but I've joined |
| 15:45:08 | 13 | Supreme and here is Supreme's information and things of |
| 15:45:12 | 14 | the sort.  So, you know, the one year, Mr. Cole has |
| 15:45:19 | 15 | tried to limit our access, as much as he can, to |
| 15:45:22 | 16 | whatever he can.  This isn't discovery, and maybe at the |
| 15:45:28 | 17 | trial, it will turn out that other information is not |
| 15:45:31 | 18 | relevant.  But, with respect to his contention that this |
| 15:45:36 | 19 | might just be additional information that a competitor |
| 15:45:39 | 20 | is looking for, he freely negotiated a protective order, |
| 15:45:46 | 21 | which protects that.  So that any information that is |
| 15:45:54 | 22 | properly labeled as "confidential," is governed by the |
| 15:45:57 | 23 | protective order, which Mr. Cole, himself, thought was |
| 15:46:03 | 24 | sufficient.  So, you know, honestly, I don't know how |
| 15:46:08 | 25 | long this information will have given them a leg up.  I |

```
16:13:03   2   Honor.
16:13:03   3               MAGISTRATE JUDGE PEDERSEN:  All right.
16:13:05   4               MS. STILLER:  Your Honor, you have one of
16:13:17   5   the binders.
16:13:17   6               THE CLERK:  This notebook.
16:13:21   7               MAGISTRATE JUDGE PEDERSEN:  Glad you
16:13:21   8   mentioned it, I probably would have forgotten.
           9
          10                      *     *     *
          11                  CERTIFICATE OF REPORTER
          12
          13      I certify that the foregoing is a correct transcript
          14   of the record of proceedings in the above-entitled
          15   matter.
          16   S/ Karen J. Clark,  RPR
          17
               Official Court Reporter
          18
```