UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL DONOGHUE and PREMIUM
MORTGAGE CORPORATION,

           Plaintiffs,

    -vs-

CYNTHIA NOSTRO, DYLAN RANDALL,
DAVID POPHAM and EVERETT FINANCIAL,
INC. d/b/a SUPREME LENDING,

           Defendants.

Case No. 6:20-cv-06100

# Defendant Supreme Lending's Memorandum of Law in Support of its Motion to Compel Discovery Pursuant to Fed.R.Civ.P. 37 and to Modify the Stipulated Protective Order

**ADAMS LECLAIR LLP**
Steven E. Cole, Esq.
Erin F. Casey, Esq.
*Attorneys for Defendant Supreme Lending*
28 E. Main St., Suite 1500
Rochester, New York 14614
scole@adamsleclair.law
ecasey@adamsleclair.law
585-327-4100
585-327-4200 fax

## Table of Contents

Page(s)

Table of Authorities ................................................................................................................. ii

Summary ................................................................................................................................. 1

A.    Statement of the Case – Issues Raised by Pleadings ..................................................... 3

B.    Plaintiffs' Disclosures – Timing and Substance............................................................. 6

C.    Standards Applicable to the Parties' Motions to Compel Discovery ..........................12

D.    Supreme's Motion to Compel Should be Granted.......................................................13

E.    Supreme's Motion to Modify the SPO to Permit AEO
Designation Should be Granted ..................................................................................14

## Table of Authorities

Pages(s)

**Cases**

*Am. Rock Sale Co. v. Norfolk Southern Corp.*, 228 F.R.D. 426 (W.D.N.Y. 2004).........................11

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ...........................................................9

*RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*,
    2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013) ...................................................................10

*Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428 (S.D.N.Y. 2011)..................................................13

**Statutes and Rules**

Fed.R.Civ.P. 1..................................................................................................................................12

Fed.R.Civ.P. 26(a).............................................................................................................................6

Fed.R.Civ.P. 26(a)(1)(A)(iii) ........................................................................................................7, 9

Fed.R.Civ.P. 26(a)(2).......................................................................................................................12

Fed.R.Civ.P. 26(b)(1).......................................................................................................................11

Fed.R.Civ.P. 26(b)(3).......................................................................................................................12

Fed.R.Civ.P. 34(a)............................................................................................................................12

Fed.R.Civ.P. 34(b)(a)(A)..................................................................................................................12

Fed.R.Civ.P. 37..................................................................................................................................1

Fed.R.Civ.P. 37(a)(1).......................................................................................................................12

Fed.R.Civ.P. 37(a)(4).......................................................................................................................12

Fed.R.Civ.P. 37(c)(1).......................................................................................................................13

Defendant Everett Financial, Inc. d/b/a Supreme Lending ("Supreme"), by its attorneys Adams Leclair LLP, submits this Memorandum of Law in support of Supreme's Motion to Compel Discovery pursuant to Fed.R.Civ.P. 37 and to Modify the Stipulated Protective Order to permit Attorneys' Eyes Only designation.

## SUMMARY

Supreme seeks to compel Plaintiffs to produce evidence that is essential to their claims for damages against Supreme, and for which Supreme is clearly entitled to full disclosure. This includes specific evidence of alleged wrongdoing with respect to borrowers whose business with Premium was alleged to have been lost or diminished, Plaintiffs' discovery of wrongdoing and efforts to mitigate harm, and the calculation of Plaintiffs' damages.

Supreme's Chart of Plaintiffs' Deficiencies, Exhibit 9 to the Declaration of Steven E. Cole dated May 30, 2020 ("Cole Dec.") in Support of Supreme's Motion to Compel, accurately states the discovery requests at issue, and (with a single exception) recites Plaintiffs' responses verbatim. Supreme has limited its motion to those requests addressing (1) specific wrongdoing alleged by Plaintiffs, including wrongful deletion or modification of Premium documents, (2) Plaintiffs' discovery of those wrongful acts and efforts at mitigation, (3) alleged damages, and (4) evidence of causation.

Supreme has limited its motion to address only a fraction of its outstanding discovery requests addressed to Plaintiffs' lengthy Amended Complaint, which consists of two hundred eighty five (285) paragraphs and twenty three (23) causes of action. Supreme has attempted repeatedly to discuss these deficiencies with Plaintiffs' counsel in writing and in personal consultations, and has advised the Court in conferences of the continuing problems Supreme has encountered in obtaining this disclosure.

Plaintiffs have sought to avoid disclosure through their oft-repeated refrain that they don't know <u>all</u> the evidence of alleged wrongdoing because it happened without their knowledge. But that does not relieve Plaintiffs of providing information that they do have available that allegedly supports the claims set forth in the Amended Complaint.

Supreme is not asking about what Plaintiffs do <u>not</u> know, and understands that Plaintiffs may acquire additional information during discovery. But it is clear from the Amended Complaint and its Exhibits, including Exhibit 5 to the Amended Complaint [Doc. 15-5], that Plaintiffs were aware of alleged acts of wrongdoing by the Individual Defendants no later than May 2, 2019, when Plaintiffs' counsel wrote to each of the defendants concerning diversions of borrowers away from Premium.

Plaintiffs failed to provide a "computation of damages" on October 30, 2020, when they served their Initial Disclosures. This failure has continued unabated for more than 20 months during the pendency of this litigation. Nor did Plaintiffs provide any meaningful information in response to Supreme's discovery requests, served on December 23, 2020. The Premium "financial statements" produced by Plaintiffs in support of their damage claims have 113 of 115 lines redacted. Plaintiffs' failure is continuing, and it has prejudiced Supreme in evaluating the amount of any exposure to liability and in fashioning specific discovery requests to explore damage claims. At this point in time, Supreme does not even have a starting point to evaluate or inquire into Plaintiffs' damage claims.

Plaintiffs have also failed to identify documents they claim were deleted or altered, or produce the documents, information and data alleged to have been taken, stolen or converted. Plaintiffs have also failed to provide information concerning whether, and when deleted information was obtainable or obtained from other sources, or restored to its original form.

2

Finally, Plaintiffs have failed to identify and produce evidence of prequalification by Premium of borrowers who were allegedly diverted to Supreme.

Supreme's request to modify the Stipulated Protective Order (SPO) [Doc. 28], arises out of the desire, communicated to Plaintiffs in December 2021, to provide Supreme's profit and loss statements relating to the Williamsville branch. Supreme had offered to provide these statements in its December 3, 2021 written responses to Plaintiffs' discovery requests. Plaintiffs have not agreed to the modification of the SPO. Supreme now moves to modify the SPO in the manner proposed to Plaintiffs on December 14, 2021 (Ex. 22 to the Cole Dec. ) by having the Court issue an amendment to the SPO to amend paragraphs 3 and 4 to state that a party may designate documents or testimony as attorneys' eyes only (AEO) if such documents or testimony is of such a private, sensitive, competitive, or proprietary nature that present disclosure to persons, other than those designated in paragraph 5(b)(2)-(9) of the SPO, would reasonably be expected to cause irreparable harm or materially impair the legitimate competitive position or interests of the producing party.

### A.     Statement of the Case – Issues Raised by Pleadings

Plaintiff's Amended Complaint, filed March 20, 2020, [Doc. 15] alleges a wide-ranging series of claims against Supreme and the Individual Defendants, each of whom are former employees of Premium Mortgage Corp. ("PMC" or "Premium"), consisting of twenty-three (23) causes of action and two hundred eighty-five (285) separate paragraphs. Supreme is named in six of the causes of action, and is alleged to have engaged in unfair competition, conversion, and tortious interference with contract and prospective business advantage, among other claims.

Relative to Supreme Lending, the specific factual allegations are largely set forth in paragraphs 31 through 50 of the Amended Complaint. Those allegations include that:

- Nostro and Randall deleted Premium prospect information from Premium files, and provided that information to Supreme. [Amended Complaint, Doc. 15, ¶¶ 37-38].

- For thirty days prior to his resignation from Premium, Randall continued to pre-qualify and run credit checks on prospects, but refrained from placing mortgages for these prospects so he could place the mortgages with Supreme instead. [Doc. 15, ¶¶ 39-40].

- Nostro engaged in the same activity for sixty days prior to her resignation. *Id.*

- Typically, Nostro and Randall would obtain 10-15 new mortgages each month. [Doc. 15, ¶ 39].

- Nostro and Randall improperly stole the data and information relating to the 30-45 prospects, used Premium funds to obtain credit checks and to pre-qualify the prospects. [Doc. 15, ¶ 42].

- Nostro and Randall converted the email addresses and phone numbers for Premium active files, deleting them from the PMC system, taking the information and corporate opportunities for Supreme. [Doc. 15, ¶ 43].

- Randall refrained from listing required information for Premium prospects in the Premium system, such as phone numbers and e-mails, instead taking them to Supreme. [Doc. 15, ¶ 45].

- Nostro and Randall took documents supplied by prospects of Premium with them to Supreme and failed to leave copies of them with Premium. [Doc. 15, ¶ 48].

- Nostro had several clients cancel applications with Premium, in favor of placing them with Supreme, including applications that Nostro had started with Premium. [Doc. 15, ¶ 49].

Supreme is alleged to have had knowledge and given direction and encouragement to Nostro and Randall regarding these activities. [Doc. 15, ¶¶ 40, 43, 49].

Paragraphs 31 through 50 of Plaintiff's Amended Complaint form the factual basis of their six causes of action against Supreme Lending (nos. 10, 12, 17, 19, 20, and 21). Plaintiffs seek to recover damages from Supreme Lending in the amount of $10,000,000. Plaintiffs reference recovery of "lost profits" at paragraphs 159, 188, 206, 213, 218-219, and 240 of the Amended Complaint.

In total, Plaintiffs allege that Nostro refrained from placing 20-30 mortgages prior to her resignation and Randall refrained from placing 10-15 mortgages. Combined, it is alleged that between 30 and 45 mortgages were not placed at Premium so that they could be taken to Supreme.

No allegation is made that any former Premium employee other than Nostro or Randall engaged in this conduct, or caused loans from Premium prospects to be placed with Supreme.

Supreme answered the Amended Complaint, denied the allegations of wrongdoing, and pled affirmative defenses to Plaintiffs' claims based on lack of causation and failure to mitigate damages, among others. [Doc. 19, p. 3].

B.     Plaintiffs' Disclosures – Timing and Substance

Supreme began asking, informally, for evidence of Plaintiffs' alleged damages before this lawsuit started. Ms. Stiller's May 2, 2019 letters to Supreme, Nostro, and Randall referred to "schedules" of prequalified borrowers who had been "diverted" to Supreme. [Doc. 15-5, pp. 2, 21, 39]. On May 8, 2019, Supreme asked for Ms. Stiller's schedules in writing. The schedules have never been provided.

There were no written communications between Plaintiffs and Supreme between May 8, 2019 and January 6, 2020, when the original complaint was filed in this matter, a period of nearly eight months. After the litigation commenced, Supreme again sought to obtain disclosure of the identity of the borrowers allegedly impacted by any wrongdoing involving the Individual Defendants in this lawsuit. Prior to the initial discovery conference in this matter, when the COVID pandemic had just begun, between May and September, 2020, Supreme repeatedly reached out informally to Plaintiffs' counsel to obtain the names of borrowers whose business was lost or diminished as the result of wrongdoing alleged in the Amended Complaint. These included telephone conferences in May and June, 2020, and numerous written requests between May and September, 2020. (Cole Dec. ¶ 18)  During the telephone conferences, Plaintiffs' counsel disclosed orally that their damages were based on wrongdoing with respect to 188 Premium borrowers, none of whom they would identify.

The parties held an unsuccessful mediation on September 9, 2020. At the mediation session, Plaintiffs provided a confidential list, for mediation purposes only, of 74 borrower names. Plaintiffs conditioned Supreme's receipt of the list on assurances that the list would only be used in mediation. (Cole Dec. 20)

Following the unsuccessful mediation, all parties served their Initial Disclosures under Fed.R.Civ.P. 26(a) and issued discovery requests to the other parties. Plaintiffs' Initial Disclosures were served on October 30, 2020 and, in addition to repeating the claim for $10 million of unspecified damages, clarified that "some of its lost revenue from the actions of Defendants in relation to misappropriated clients is in the sum of $500,191.00" as of October 30, 2020, exclusive of interest. (Cole Dec., Ex. 11, Plaintiffs' Initial Disclosures, October 30, 2020, ¶ 3].

Plaintiffs Initial Disclosures did not include, as required by Rule 26(a)(1)(A)(iii), "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]"

As of October 30, 2020, Supreme had received no useable information from Plaintiffs regarding the prequalified borrowers at issue. On December 23, 2020, Supreme served its First Set of Interrogatories and First Request for Production of Documents on Plaintiffs. (See Cole Dec., Exs. 1 and 3). Supreme's Requests were directed towards the specific allegations in Plaintiffs' voluminous Amended Complaint, and in particular to allegations relating to alleged "Wrongdoing" (a defined term including all conduct by Defendants for which Plaintiffs sought relief), documents and information that was deleted, modified or taken, identifying "misappropriated clients" referred to in Plaintiffs' Initial Disclosures, and seeking information relevant to Plaintiffs' damage claims.

7

Plaintiffs failed to respond to Supreme's discovery requests in any fashion until January 7, 2022, when it provided written responses and an initial document production. On January 7, Plaintiffs finally identified 110 borrowers (139 names including co-borrowers) whose business had been allegedly lost or diminished because of Wrongdoing. Supreme believes these to be the (110) "misappropriated clients" referred to in Plaintiffs' Initial Disclosures. However, as reflected in Supreme's Deficiency Chart, (Cole Dec., Ex. 9), Plaintiffs' discovery responses and document production failed to:

> (a) provide a computation of damages with respect to any or all of the misappropriated clients, Deficiency Chart, nos. 1-2;
>
> (b) identify communications or documents that concerned alleged Wrongdoing, *Id.*, nos. 3, 5, and 10;
>
> (c) identify documents that were taken, modified, or deleted, *Id.*, no. 4;
>
> (d) provide financial or other documents supporting Plaintiffs' damage claims, *Id.*, nos., 7, 8, 9, and 16;
>
> (e) provide Plaintiffs' communications with misappropriated clients during the time period of the alleged Wrongdoing, which is relevant to causation and mitigation of damages, *Id.*, no. 12;
>
> (f) identify the misappropriated clients that had been prequalified by Plaintiffs and produce documents reflecting prequalification, *Id.*, nos. 13 and 14; and
>
> (g) answer the interrogatories under oath, *Id.*, nos. 2, 11, 12, 13, and 14.

As noted in the Ex. 9, nos. 3-5, 8-10, and 15, Plaintiffs have failed to specify responsive documents to 20 of Supreme's requests, instead referring Supreme to thousands of pages of documents and, in most cases, referring Supreme to Plaintiffs' entire 50,000-page initial

production. Plaintiffs have responded in this fashion while, at the same time, repeatedly accusing Supreme of having produced documents in a "document dump." [1]

Plaintiffs are clearly required to provide these disclosures and discovery. In *Design Strategy, Inc. v. Davis*, the Second Circuit recognized that Fed.R.Civ.P. 26(a)(i)(A)(iii) "imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34. A party claiming damages [. . .] must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34." 469 F.3d 284, 296 (2d Cir. 2006). The *Design Strategy* decision was cited to Plaintiffs' counsel on March 17, 2022 in an effort to obtain the computation and documents supporting the $500,191 damage figure. Neither has been provided and they are now 20 months overdue.

Supreme is also clearly entitled to the discovery regarding the costs associated with any alleged lost revenues due to Wrongdoing. This information is required to be disclosed under Fed.R.Civ.P. 26(a)(1)(A)(iii). While Plaintiffs incorrectly reference lost revenues, Plaintiffs may be seeking recovery of lost profits as referenced in the Amended Complaint. See *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013) at *7-8 (distinguishing gross and net profits, and requiring net profits to be proved). This requires a consideration of costs, which necessarily comprise documents "supporting" Plaintiffs' calculation of damages. Plaintiffs have either objected to Supreme's requests seeking financial statements and other documents reflecting revenue and costs (Ex. 9, nos. 5,

---

[1] Supreme properly produced documents as they were kept in the ordinary course of business and has identified the source of all documents.

9

6, 7), simply not provided responsive documents (*Id.*, nos. 1, 2), or identified 6,700 pages or 50,000 pages of their initial production as supporting their damage claims (*Id.*, nos. 8, 9). These responses are evasive and improper.

On March 18, 2022, Plaintiffs produced 12 pages of "income statements" for the years 2018 through 2020, however, 113 of 115 entries in each statement are redacted, including all cost information. (Cole Dec., Ex. 12). Supreme has searched through the remainder of Plaintiffs' 7,000-page production on March 18, and can locate no additional documents addressing firm-wide revenues or any costs whatsoever.

Plaintiffs have similarly refused to identify or produce documents supporting their claims that Wrongful Conduct caused the loss of specific Misappropriated Clients (Cole Dec., Ex. 9, nos. 3, 4, 5, 10, 11), whether the allegedly Misappropriated Clients had any prior contact with Premium and were prequalified by Premium (*Id.*, nos. 13, 14), and whether Premium communicated with any Misappropriated Clients after the Individual Defendants began working for Supreme (*Id.*, no. 12).

Plaintiffs have claimed that the information requested should be sought from the Individual Defendants, not Plaintiffs (*Id.*, nos. 11, 13, 14), on the basis that Plaintiffs do not have "complete" information. Plaintiffs' counsel has used a similar argument in Court conferences that Plaintiffs' obligations to disclose evidence can be put on hold until Supreme produces each and every borrower document in its possession regarding any loan that closed after the Individual Defendants left Premium's employment. (Cole Dec., Ex. 19, February 9, 2022 Tr., 16:15-17:21) ("[w]e have to takes Supreme's list [and] try and reverse engineer

10

whether those folks were introduced through Premium[.]") At that same conference, Supreme identified and discussed Plaintiffs' deficient responses. (Ex. 19, Tr. 26:11-27:3)

These arguments reflect Plaintiffs' basic misunderstanding of their discovery obligations, as absent a court order, a "party may not refuse discovery on the ground that the requesting party is in possession of the requested discovery." *Am. Rock Sale Co. v. Norfolk Southern Corp.*, 228 F.R.D. 426, 440 (W.D.N.Y. 2004). Further, Supreme only seeks the information and documents in Plaintiffs' possession. If Plaintiffs learn of additional Wrongdoing, Misappropriated Clients, or damages, they must simply comply with their obligations to supplement responses.

Since January 7, 2022 Supreme has sought to obtain Plaintiffs' voluntary compliance with their discovery obligations informally without success. These efforts include written correspondence with Plaintiffs' counsel on January 27, February 4, and March 17, 2022, telephone conferences with Plaintiffs' counsel on February 8, 17, and May 27, 2022, and discussions in Court conferences on February 9 and February 25, 2022.

Supreme's good faith efforts have not been successful in obtaining Plaintiffs' cooperation in providing necessary discovery. As a result, Supreme has been required to bring this motion to compel discovery. [2]

---

[2]  Supreme's counsel met and conferred with Plaintiffs' counsel most recently on May 27, 2022 concerning deficiencies in Plaintiffs' responses to Supreme's second set of Interrogatories and second set of Requests for Production of Documents. Supreme will continue with efforts to resolve those issues with Plaintiffs' counsel and promptly advise the Court if and when a resolution is achieved.

### C. Standards Applicable to the Parties' Motions to Compel Discovery

The parties are permitted to take discovery in accordance with Fed.R.Civ.P. 26(b)(1), which provides:

> **(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Interrogatories "may relate to any matter that may be inquired into under Rule 26(b)" and "must, to the extent not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 26(a)(2), (b)(3). Production of documents within the scope of Rule 26(b) may also be requested, provided that the request describes "with particularity each item or category of item" that is the subject of the request. Fed.R.Civ.P. 34(a), (b)(a)(A). The applicable rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

Once relevance has been shown, it is up to the responding party to justify curtailing discovery. *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011).

Rule 37 permits a party to make a motion for an order compelling disclosure or discovery, which includes a certification that the movant has in good faith conferred or attempted to confer" with the non-disclosing party "in an effort to obtain it without court

action." Fed.R.Civ.P. 37(a)(1). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose." Fed.R.Civ.P. 37(a)(4).

### D. Supreme's Motion to Compel Should be Granted

As set forth in Ex. 9, Plaintiffs have failed to provide Initial Disclosures, verified interrogatory responses, responses to requests for production of documents, or responsive documents that are clearly relevant to Plaintiffs' claims of Wrongful Acts resulting in the loss of Misappropriated Clients, and Supreme's defenses to those claims. Supreme has limited its motion to those requests addressing critical elements of Plaintiffs' claims or Supreme's defenses.

For the reasons set forth in the Chart and herein, the Court should issue an order requiring Plaintiffs to:

1. Provide the "computation of damages" and "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered" as required by Fed.R.Civ.P 26(a)(1)(A)(iii);

2. Answer "fully in writing under oath" Supreme Interrogatory Nos. 6 (First Set) and 1, 2, 4 and 5 (Second Set);

3. Fully respond to Supreme Document Request Nos. 1, 2, 3, 8, 10, 11, 24, 25, 26, 27, 28, 29, 30, 41, 42, 43, 52, 64, 76, 85, 89, and 99 (First Set) and Nos. 1 and 2 (Second Set) by withdrawing asserted objections, producing responsive documents, and identifying the documents that are responsive to each request.

Supreme also requests an award of its reasonable costs and attorneys' fees caused by Plaintiffs' failures, pursuant to Fed.R.Civ.P. 37(c)(1).

13

### E.  Supreme's Motion to Modify the SPO to Permit AEO Designation Should be Granted

Paragraph 15 of the SPO provides that the Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

As the Court is well aware, Premium and Supreme are competitors in the marketplace. Plaintiffs have tried, unsuccessfully, to modify the SPO to provide regulators with access to confidential material disclosed by Supreme in this litigation. Supreme understandably considers it necessary to protect confidential financial information that would be valuable to Premium in competing, and not rely solely upon Premium's interpretation of its obligations to not use Supreme's confidential financial information for competitive purposes.

As stated above, Premium obviously feels the same way, as it has redacted almost every piece of information on the financial statements provided to Supreme. Premium's solution is to not provide the information at all. Supreme suggests that information be exchanged, but that AEO designation be permitted to both sides to protect sensitive financial information.

Supreme respectfully requests that the Court modify the SPO as set forth above.

DATED:  May 30, 2022               **ADAMS LECLAIR LLP**

By: /s/ Steven E. Cole
Steven E. Cole, Esq.
Erin F. Casey, Esq.
*Attorneys for Defendant Everett Financial, Inc. d/b/a Supreme Lending*
28 E. Main Street, Suite 1500
Rochester, New York 14614
scole@adamsleclair.law
ecasey@adamsleclair.law