UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL DONOHUE AND
PREMIUM MORTGAGE COMPANY,

                     Plaintiffs,

            v.

CYNTHIA NOSTRO, DYLAN
RANDALL, DAVID POPHAM,
EVERETT FINANCIAL *d/b/a*
SUPREME LENDING,

                     Defendants,
_____

JACKIE RUOTSI,

                     Movant,
_____

CYNTHIA NOSTRO,

                     Counter-Claimant,

            v.

MICHAEL DONOGHUE, PREMIUM
MORTGATE CORPORATION,

                   Counter-Defendants,
_____

DYLAN RANDALL,

                     Counter-Claimant,

            v.

MICHAEL DONOGHUE, PREMIUM
MORTGATE CORPORATION,

                   Counter-Defendants
_____

DECISION AND ORDER ON
MOVANT'S MOTION TO QUASH
SUBPOENA

20-CV-6100-EAW-MJP

## INTRODUCTION

**Pedersen, M.J.** Before the Court is nonparty movant Jackie Ruotsi's ("Ruotsi") motion (ECF No. 76) seeking an Order pursuant to Federal Rule of Civil Procedure 45 quashing a subpoena issued to her by Everett Financial d/b/a Supreme Lending ("Supreme"). Also before the Court is the motion on behalf of Plaintiffs Michael Donoghue and Premium Mortgage Corporation ("Plaintiffs") (ECF No. 77) also seeking to quash Supreme's subpoena issued to Ruotsi and sanctions per Federal Rule of Civil Procedure 45(d)(1).

For the reasons stated below, the Court denies Plaintiffs' motion to quash and for sanctions, denies, in part, Ruotsi's motion to quash, and modifies the revised subpoena as specified herein.

## BACKGROUND

Plaintiffs filed an action against Defendants Cynthia Nostro, Dylan Randall, David Popham (collectively, "Individual Defendants"), and Supreme (collectively, "Defendants") for money damages and injunctive relief. The action arises out of Plaintiffs' allegations that Defendants sabotaged Premium's computers and misappropriated information and data.

Ruotsi is currently an employee of Premium and a nonparty in this action. (Ruotsi Decl. ¶ 1, ECF No. 76-3.) Ruotsi is a mortgage loan originator. Her job is to assist customers who desire to obtain mortgage loans for the purchase of residential properties. (*Id.* ¶ 3.) Ruotsi worked for Premium from 2013 until she resigned in April 2019. (*Id.* ¶ 1.) From April 2019 until March 2022, Ruotsi worked for Supreme. (*Id.* ¶ 2.)

2

In March 2022, Ruotsi resigned from Supreme and resumed employment with Premium. (*Id.* ¶ 1.)

On or around May 10, 2022, Supreme served Ruotsi with a subpoena seeking thirteen categories of documents. (*Id.* ¶ 4.) Although not named in the original or amended complaints, Premium identified Ruotsi as one of its employees that one of the Defendants allegedly solicited in violation of her agreement with Premium. (Cole Decl. ¶ 6, Jun. 24, 2022, ECF No. 89; Am. Compl. ¶ 163, ECF No. 15.) Supreme alleges that Ruotsi has relevant personal information concerning the allegations in the amended complaint. (Cole Decl. ¶ 9.) Specifically, Supreme believes Ruotsi routinely used a personal phone to communicate about business-related matters during her employment with both Premium and Supreme. (*Id.* ¶ 10.) Supreme argues that this information is relevant to the action because it pertains to (1) the Individual Defendants' departures from Premium to Supreme in 2019; (2) communications with pre-qualified borrowers at Premium prior to 2019 who subsequently closed loans at Supreme; (3) what incentives Premium offered to Ruotsi in March 2022, for re-employment of Ruotsi, a key witness during this litigation; and (4) how Premium has handled borrowers who were pre-qualified at Supreme on or before Ruotsi's departure from Premium in March 2022. (*Id.* ¶ 14.) Supreme alleges it subpoenaed Ruotsi specifically because no party to this action has access to text messages or other electronic communications from her personal devices or email. (*Id.* ¶¶ 11–12.)

On May 20, 2022, counsel for both Plaintiffs and Ruotsi filed motions to quash the subpoena. Both argue that the subpoena is overbroad and objectionable because it requests over nine years of all of Ruotsi's documents and communications with Premium

3

and Supreme, personal and private records, and confidential customer information. Furthermore, the movants argue that Supreme's subpoena poses an undue burden because Ruotsi would have to hire an e-discovery vendor at significant expense, the subpoena seeks irrelevant information, and Supreme is effectively using the subpoena to upset and harass Ruotsi following her resignation from Supreme. (Rothenberg Decl., May 20, 2022, ECF No. 76-1.) Plaintiffs contend that Supreme's subpoena is "a transparent attempt to obtain Premium's confidential documents and information from a non-party employee." (Pls.' Mem. of Law at 6, May 20, 2022, ECF No. 77-1.)

Supreme contacted counsel for Premium and Ruotsi shortly after the motions were filed to attempt to reach an agreement on the scope of the subpoena and to alleviate any burden on Ruotsi. (Cole Decl. ¶¶ 16–17, ECF No. 89.) On June 8, 2022, counsel for the parties and Ruotsi met by videoconference and Supreme received more information about the objections raised in the motions. As a result, Supreme drafted a revised subpoena to Ruotsi and emailed it to her counsel on June 16, 2022. (*Id.* ¶ 19.) Ruotsi's counsel rejected the revised subpoena on June 20, 2022. (*Id.* ¶ 25.) A copy of the revised subpoena is attached to Mr. Cole's affidavit as Exhibit 1.

The revised subpoena reduced the number of demands from 13 to 10 and are as follows:

### REVISED SUBPOENA DOCUMENT REQUESTS

1. All documents reflecting business conducted by you in the mortgage industry on behalf of Premium Mortgage Company or Supreme Lending between January 1, 2019 and March 17, 2022, including communications with potential borrowers, borrowers, financial institutions, and real estate agents.

2. All documents reflecting communications concerning the termination of your employment from Premium Mortgage Company in 2019.

4

3. All documents reflecting communications concerning your offer of employment by Supreme in 2019.

4. All documents reflecting communications concerning your transition of employment from Premium Mortgage to Supreme Lending in 2019.

5. All documents reflecting communications concerning the termination of your employment with Supreme in 2022.

6. All documents reflecting or concerning actual or potential offers of employment by Premium Mortgage Company from 2019 through March 2022, including but not limited compensation or other consideration to be received.

7. All documents reflecting communications with representatives of Premium Mortgage Company from January 1, 2019 to March 17, 2022.

8. All documents of Premium Mortgage Company that remained in your possession, custody, or control when your employment with Supreme Lending began in 2019 and were not destroyed or returned to Premium.

9. All documents of Supreme Lending that remained in your possession, custody, or control when your employment with Premium began in 2022 and were not destroyed or returned to Supreme Lending.

10. All documents reflecting communications after March 17, 2022, with respect to any loan or prospective loan for which you had previously communicated with a borrower or other third person on behalf of Supreme Lending.

In all cases, excluding any communications made to or from the following e-mail address: @premiummortgage.com

(Cole Decl. Ex. 1, ECF No. 89.)

## STANDARD OF LAW

A court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies" or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). The moving party bears the burden of persuasion in a motion to quash a subpoena. *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 251 (W.D.N.Y. 2018) (citations omitted).

5

## ANALYSIS

Plaintiffs and Ruotsi argue that the revised subpoena requires disclosure of privileged or protected matter and that it poses an undue burden on Ruotsi. Supreme contends that the revised subpoena sufficiently addresses the objections in the motions to quash because it focuses on Ruotsi's business communications on personal devices from January 2019 through March 2022. (Cole Decl. ¶ 21.) Further, the revised subpoena seeks documents relating to Ruotsi's alleged involvement in the Individual Defendants' "scheme" as alleged in the amended complaint, Premium's efforts to influence Ruotsi or induce her to leave Supreme despite her alleged involvement in the "scheme," and post-termination communication with Supreme customers. (Cole Decl. ¶¶ 22–24.) Supreme argues that these documents are relevant to any consideration Ruotsi may have received that may impact her motivation to testify, Supreme's defenses of unclean hands, waiver, and estoppel, and Premium's requests for injunctive relief. (*Id.*) Furthermore, Supreme maintains the revised subpoena expressly excludes any documents sent to or from Ruotsi's Premium email address and seeks only documents unavailable through party discovery. (*Id.* ¶ 21; E-mail from Steve Cole to Michael Rothenberg (Jun. 16, 2022) and response (Jun. 20, 2022) *attached as* Exhibit 2, ECF No. 89-2.)

On June 20, 2022, Ruotsi's counsel rejected the revised subpoena. He argued that the modifications contained in it seek more information than the original subpoena. First, despite limiting the time from nine years to three, he argued the revised subpoena is substantively the same. The new first request is apparently broader than the original first request because it asks Ruotsi, a nonparty, to produce "[a]ll documents reflecting

6

business conducted by [that nonparty] in the mortgage industry" including all communications with "potential borrowers, borrowers, financial institutions, and real estate agents," for two different employers over three years. (*Id.* Ex. 2.) Second, Ruotsi's counsel contends that the revised requests are not relevant, especially because Supreme did not seek any documents from Ruotsi while she worked at Supreme. (*Id.*) Third, Supreme allegedly did not seek these documents from Premium or the Individual Defendants and, accordingly, Supreme should withdraw the revised subpoena so that the parties can complete party discovery before burdening a nonparty with a subpoena. (*Id.*) Fourth, seeking these documents to deduce Ruotsi's biases and incentives to testify serves as a tacit threat to upset, harass, and intimidate her. (*Id.*)

Since the parties' videoconference on June 8, Ruotsi has allegedly refused to discuss what storage devices may contain the information sought, the volume of information that may be responsive to the revised subpoena, or how to reduce the burden the revised subpoena poses to her. (Cole Decl. ¶¶ 26–27.) In the same e-mail containing the revised subpoena, Supreme offered to arrange for an outside vendor to collect responsive documents from Ruotsi's personal devices "with minimal inconvenience and no cost to Ms. Ruotsi." (*Id.* Ex. 2.) Ruotsi's counsel did not address that offer in reply, instead suggesting that the Court resolve this dispute. (*Id.*)

***Plaintiffs Have Standing to Move to Quash a Subpoena to a Nonparty.***
"[A] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Strike 3 Holdings, LLC*, 337 F. Supp. 3d at 251 (citation omitted). Thus, a party moving to quash a subpoena issued to a nonparty must claim a privilege or right personal to the movant;

7

arguing that a subpoena poses an undue burden to the third party is insufficient to confer standing. *Id.* at 252 (citation omitted) (finding that plaintiff seeking to quash nonparty subpoena to protect personal information from being disclosed had standing). Supreme did not challenge Premium's standing here. Nevertheless, because Premium seeks to protect its confidential customer information, Premium has standing to move to quash Supreme's subpoena.

***Supreme's Subpoena Requires Disclosure of Privileged Matter.***

Premium is concerned that Supreme's subpoena requires Ruotsi to produce "information which include Premium's customer lists and potential customer lists, customer contact information, employment contracts, salary information, and any number of other confidential documents." (Pls.' Mem. of Law at 7–8, ECF No. 77-1.) The Court notes that revised demand eight requests documents in Ruotsi's possession that belonged to Premium.

The parties agreed to a Stipulated Protective Order ("SPO"). (SPO, Feb. 7, 2022, ECF No. 50.) The scope of the SPO does not specifically include information produced by a nonparty witness who is subpoenaed, but not deposed. If the SPO did apply to information produced in response to Supreme's revised subpoena, then the Court could rely on it to address Premium's concerns. *See Excellus Health Plan, Inc. v. Tran*, 222 F.R.D. 72, 73–74 (W.D.N.Y. 2004) (denying motion to quash where nonparty claimed production of highly sensitive materials would inappropriately advantage subpoenaing party and court found that the protective order addressed the nonparty's confidentiality concerns). In the *Excellus* case, Judge Curtin directed the plaintiff's counsel to conduct a court-supervised *in camera* review of the nonparty's production of evidence for

8

compliance with the parties' protective order. Were that option available here, the Court would follow a similar procedure to protect information that would be safeguarded by the SPO.

### *The Subpoena Does Not Pose an Undue Burden on Plaintiffs.*

In determining whether a nonparty subpoena poses an undue burden, courts consider four factors: "(1) relevance; (2) the party's need for the information; (3) the breadth of the request; and (4) the burden imposed." *Strike 3 Holdings, LLC*, 337 F. Supp. 3d at 252 (citation omitted). The undue burden discussed in Rule 45 pertains to the burden of production on the recipient of the subpoena, not on the plaintiff moving to quash the subpoena. *Malibu Media LLC v. Doe No. 4*, No. 12-cv-2950 (JPO), 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) (finding that defendant's concerns "have no place within the undue burden calculus, as the burden of literal compliance with this subpoena falls to a third-party"); *Strike 3 Holdings, LLC v. Doe*, No-17-CV-9659 (VEC), 2018 WL 2371730, at *2 (S.D.N.Y. May 23, 2018) (citation omitted) ("Because the subpoena does not obligate Defendant to do or produce anything, Defendant cannot object to the subpoena on the grounds that it would constitute an undue burden.").

In this matter, Plaintiffs face no undue burden because of Supreme's subpoena. The burden of complying with the subpoena is entirely on Ruotsi. *See Malibu Media LLC*, 2012 WL 5987854, at *2; *Strike 3 Holdings, LLC,* 2018 WL 2371730, at *2. Notwithstanding that Premium is Ruotsi's current employer, Supreme's subpoena purports to require Ruotsi to produce documents primarily in her possession and not available through party discovery.

9

***Modification of the Subpoena Duces Tecum Can Alleviate the Undue Burden on Ruotsi and Protect Confidential Information.***

Supreme's original subpoena requests span from 2013 to 2022, requesting all documents and communications concerning Ruotsi's employment with Premium and Supreme, her communications with third parties and their transition of employment between the two companies, and documents regarding customers or potential customers of both companies. (Subpoena *Duces Tecum* to J. Ruotsi at 8–9, ECF No. 77-3.) Most, if not all, of these documents would likely be available through party discovery and would require Ruotsi to hire an e-discovery vendor at substantial expense to comply with the ESI instructions. Therefore, the subpoena as originally proposed, poses an undue burden to Ruotsi. *See Langford v. Alegent Health*, No. 8:09CV169, 2010 WL 2732876, at *2 (D. Neb. July 8, 2010) (quashing subpoena on nonparty for posing undue burden because defendant possessed sought documents and plaintiff had not exhausted production efforts); *Ultimate Timing, L.L.C. v. Simms*, No. 3:09-mc-6-RLY-WGH, 2010 WL 378436, at *1 (S.D. Ind. Feb. 1, 2010) (granting motion to quash where subpoena requesting "all financial records" related to accounts owned by competing companies was too broad and unduly burdensome).

When ruling on a motion to quash a subpoena *duces tecum*, courts are not limited to quashing the subpoena; courts may modify the subpoena to remove its objectionable features while preserving the rest. Fed. R. Civ. P. 45(d)(3)(A); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (finding that District Court erred in quashing subpoena and modifying subpoena in several respects.). Courts generally prefer modifying subpoenas over outright quashing. *Cooper v. Hill*, No. 12-CV-12227S, 2016 WL 7366976, at *2 (W.D.N.Y. Dec. 20, 2016)

10

("[e]ven when courts can find problems with requests in subpoenas, they will modify the subpoenas before quashing them altogether if modifications can correct the problems."). Courts may modify overly broad or unduly burdensome subpoenas to narrow the scope by, for example, reducing the number of documents requested, removing duplicative requests, or limiting the time frame of the documents to be produced. *See Mgmt. Comp. Grp. Lee, Inc. v. Okla. State Univ.*, No. CIV-11-967-D, 2011 WL 5326262, at *4–5 (W.D. Okla. Nov. 3, 2011) (modifying subpoena requesting over 30,000 documents to approximately 6,571 documents to alleviate burden); *Koch v. Greenberg*, No. 07 Civ. 9600(BSJ)(DF), 2009 WL 2143634, at *3 (S.D.N.Y. July 14, 2009) (modifying subpoena by quashing duplicative document requests); *Bonutti v. Lehman Bros., Inc.*, No. 05 C 4409, 2005 WL 2848441, at *3 (N.D. Ill Oct. 27, 2005) (reducing timeframe of subpoena's document requests from fourteen years to two years). Notwithstanding the court's power to modify subpoenas, it has no duty to modify the request itself; a court is free to quash a subpoena to allow the issuing party to draft a new one. *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) ("Though modification of an overbroad subpoena might be preferable to quashing, courts are not required to use that lesser remedy first.").

**Modification of the Subpoena Duces Tecum.**
The Court hereby modifies Supreme's revised subpoena requests as follows:

1. Ruotsi is not required to produce any e-mail document to or from her work e-mail "@premiummortgage.com."

2. All the provisions of the parties' SPO will apply to any information produced by Ruotsi in response to Supreme's subpoena.

11

3. Text messages or other electronic communications from Ruotsi's personal devices or personal e-mails produced by Ruotsi that are arguably violative of Premium's claimed confidential information are to be produced to the Court for *in camera* inspection.

4. Text messages or other electronic communications from Ruotsi's personal devices or personal e-mails produced by Ruotsi that are arguably violative of Supreme's claimed confidential information are to be produced to the Court for *in camera* inspection.

5. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails in Ruotsi's possession sent to or from Ruotsi regarding business conducted on behalf of Premium Mortgage Company or Supreme Lending between January 1, 2019 and March 17, 2022, including communications with potential borrowers, borrowers, financial institutions, and real estate agents.

6. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails in Ruotsi's possession reflecting communications concerning the termination of Ruotsi's employment from Premium Mortgage Company in 2019.

7. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails in Ruotsi's possession reflecting communications concerning offers of employment to Ruotsi by Supreme in 2019.

8. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails in Ruotsi's possession reflecting

communications concerning Ruotsi's transition of employment from Premium Mortgage to Supreme Lending in 2019.

9. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails in Ruotsi's possession reflecting communications concerning the termination of Ruotsi's employment with Supreme in 2022.

10. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails in Ruotsi's possession reflecting communications with representatives of Premium Mortgage Company from January 1, 2019 to March 17, 2022.

11. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails of Premium Mortgage Company remaining in Ruotsi's possession, custody, or control when her employment with Supreme Lending began in 2019 and were not destroyed or returned to Premium.

12. Ruotsi will produce all documents of Supreme Lending remaining in Ruotsi's possession, custody, or control when her employment with Premium began in 2022 and were not destroyed or returned to Supreme Lending.

13. Ruotsi will produce all text messages or other electronic communications from Ruotsi's personal devices or personal e-mails reflecting communications after March 17, 2022, with respect to any loan or prospective loan for which Ruotsi had previously communicated with a borrower or other third person on behalf of Supreme Lending.

In addition to modifying the document demands, the Court orders Supreme to arrange for any ESI collection and pay the expenses thereof. ESI collection from a personal device must not be unduly disruptive to Ruotsi's use of that personal device.

***Plaintiffs are not entitled to sanctions.***

Given that the Court finds that the revised subpoena does not impose an undue burden or expense on Plaintiffs, as explained above, Plaintiffs are not entitled to sanctions pursuant to Federal Rule of Civil Procedure 45(d)(1).

## CONCLUSION

The Court hereby denies Plaintiffs' motion to quash, including their motion for sanctions (ECF No. 77); denies, in part, Ruotsi's motion to quash (ECF No. 76), and modifies the revised subpoena as specified in this Decision and Order. The Court directs the parties to meet and confer within 14 days of the date of this Decision and Order with counsel for Ruotsi to comply with the subpoena as modified.

**SO ORDERED**.

Dated:  September 26, 2022
        Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge